We will hear argument next in No. 23-1065, Fitbit v. Koninklijke Philips. Mr. Pallas, is that correct? That's correct, sir. May it please the Court. The Board erred in at least three main ways. First, the Board misconstrued and misapplied the plurality of sensor limitations when it did its analysis with respect to Kroll and Damon. Second, the Board erred with respect to its analysis on activity points in its application of Kroll. And third, the Board improperly permitted Philips to include new evidence and new arguments on reply in its application of the term activity points with respect to Damon. So let me start with the plurality of sensor limitations. The Board failed to properly consider the plain meaning of the plurality of sensor limitations in the context of the 377 patent, and that's important. It did so when it found that Kroll's acceleration sensor, a single acceleration sensor, or Damon's three accelerometers, met both the plurality of sensor limitation, which, as recited in Claims 1-25, includes at least three accelerometers. Counsel, can I ask you, at page 818, I think that's Kroll, it's in the right-hand column, paragraph 16, it refers to each of the one or more triaxial accelerometers, and that's a disclosure in Kroll. Why doesn't that provide substantial evidence? Because, you know, that's not saying there's a single triaccelerometer with three sensors. It's saying that there's one or more triaxial accelerometers. So why isn't that satisfactory? Yeah, I can respond to that in a couple of ways, Your Honor. Thank you for that. So you're referring to the reference to paragraph 16 in Kroll, which is at appendix 818. Yes. So the Board relied on this. Just a little bit of background for you, Your Honor. The Board cited this in its institution decision. This is something that Phillips didn't include or cite or rely on in its petition. Well, let's put that aside. You know, we briefed that issue. We think that was improper. But to get directly to your question, Judge Stovall, there's two reasons. Number one, paragraph 16 is actually a different embodiment from the embodiment that Phillips relied on in its petition, which is the figure 7 embodiment of Kroll. And you'll see that at, I think it's at 823 or 807, sorry, appendix 807, figure 7. That's what Phillips relied on in terms of the embodiment for the plurality of sensory limitations. Then the Board came in on its institution decision and said, well, hey, paragraph 16 includes this citation. In summary of the invention, right? Well, it's – Paragraph 16 was in the summary of the invention. In paragraph 16, it is in the summary of the invention. That is correct, Your Honor. But if you read right from the first line, in at least one embodiment, then it starts to describe what was in this embodiment. The same thing is in paragraph 85, which describes figure 7, and that's at 822, appendix 822. When it describes figure 7, it depicts a block diagram of at least one embodiment. So there's a couple of responses to this. Number one, the Board hasn't really explained, or Phillips hasn't really explained, how does a specification that just says at least one embodiment, how does that in paragraph 16 turn it into referring to all embodiments or the invention when it doesn't say that? But there is even a more technical or more substantive response to this issue. When you read what paragraph 16 is describing, it's actually directed to a device for alerting a user for prolonged sedentary behavior, and that's what it says in paragraph 16. When you look at paragraph 85, when it's describing the figure 7 embodiment, it states that that's a device for monitoring physical activity for reporting calorie-divergent information. So our argument is, at least the first part, is that's a completely different embodiment, and there's no substantial evidence to support the Board's findings that that isn't the case. But I think our second argument is actually more relevant, and I should have started with that, because the fact of the matter is it's the same issue with respect to the figure 7 embodiment that applies to this issue. So directly to your point, Your Honor, if you have multiple triaxial accelerometers, which is something that's described in paragraph 16, let's say you have two triaxial accelerometers. Each triaxial accelerometer includes three accelerometers. All that's disclosing, and this is what we explain, is in that particular example, six accelerometers. We still have the question, and the Board never answered this, and Phillips never addressed this, which is what the plain meaning of the limitation in the claim should be interpreted as. That only shows six accelerometers or at least three accelerometers, but it doesn't show or disclose a plurality of sensors that include at least three accelerometers. And to understand that point, I want to go back to this. Let me just see if I'm understanding right. Your view is that given the language here of the claim requires a sensor, an individual sensor, to have a plurality of accelerometers, to have at least three accelerometers, because the language is that there is a plurality of sensors, and within that plurality there are at least three accelerometers. So our position isn't quite what Your Honor has represented, so allow me to explain. So what Your Honor was describing is, I believe, what the Board was doing. Okay, and the Board took a position that we disagree with. So if we start with the claim language, as Your Honor started with, Claims 1 and 25 require a plurality of sensors that include at least three accelerometers. That does not state that the accelerometers are the sensors. It could, though, right? I mean, it's broad language. It says a plurality of sensors including at least three accelerometers. So you're saying, you know, in a box diagram, you'd have to have, say, two sensors, each one of which has at least three accelerometers, right? Is that what you're – I'm interrupting you. No, I'm interrupting you, Your Honor. Yes, but I have to qualify because of the last point you made I disagreed with. So your first point was it could, right? On its face, if you just look at the language, sure, if you want to look at it that way. But the key here is, and this is where the Board took a misstep, it's in the context of the 377 patent when you look at this language. I'd like to direct you to now the 377 patent specification, which repeatedly and consistently describes the different types of motion sensors that can be included in the portable activity monitoring device. And to Your Honor's question, it is a plurality of sensors in that claim. It's not just one sensor, right? So when you look at the specification, a good example is Appendix 72. It's Figures 3A to 3C. And that just gives one example of what this specification is describing. There you'll see a motion sensor, for example, Motion Sensor 12, and it's in a box. And within that box, it has particular sensing instrumentalities, components. In that particular instance, it's an accelerometer. You can also have a pedometer. You can have a gyroscope. You can have different types of these instrumentalities within each sensor. The patent uses the term over 200 times in the specification. In all instances, it's not saying what the Board is indicating. What they're using the term. Is the word including? Sensor. Sensor, sorry. So the point being is what the Board is saying, and make no mistake, this is what the Board's position is. If you take a look at Appendix 20 or 16. As I understand it, the Board said two things. One is a single triaxial with three accelerometer sensors meets this limitation. And it says, in addition, Kroll teaches multiple triaxial accelerometers. And either way, you get compliance with this claim language. And the second one, putting aside your, you know, procedural point about whether that was relied on sufficiently in the petition, would, in fact, meet the limitation. Would it not? We disagree on both instances. So to frame it better from my perspective, Your Honor, the Figure 7 and Paragraph 16 embodiments, whether you have a single accelerometer in Kroll that's a triaxial accelerometer, which includes three accelerometers, or if you have the Paragraph 16 example that has more than one triaxial accelerometer. The point here is we've got to start from the perspective of what do these terms mean in Claims 1 and 25? When it says plurality of sensors that include at least three accelerometers, the question for this Court, honestly, is rather simple. It's Clinket's position is that each, like in Figure 3A, each of the plurality, you have to have a plurality of sensors. And within them, contained within them, you have to have at least three accelerometers. The Board's position and the Phillips' position all along was they just pointed to an accelerometer. Is it your view that an accelerometer all by itself cannot be a sensor under this? Each of these figures that you rely on happen to be sensors that have a number of things in them. But what about a sensor in which the only thing in it was an accelerometer? Well, that's something that you can have a motion sensor that can have a single accelerometer. And nothing else in it, so it's not like it has it in it. It is the sensor. Well, I've got to push back a little bit on that. It is the sensor part because we're looking at what the claim language includes. But to your example, Your Honor, if you have a motion sensor or a sensor like we have described in the 377 patent and it has a single accelerometer, our position is it is not the accelerometer. The language of the claims makes that clear in the context of the specification. Appendix 110, Appendix 113, 115 in Columns 12, talking about Figures 5B, Figure 3, throughout the specification when it describes these motion sensors and it has these different particular instrumentalities within them, it's not equating, which is what the board did, an accelerometer to the motion sensor. It includes it. And I'll point this out. Does the spec ever talk about an embodiment in which there is a sensor and that sensor is nothing but an accelerometer? The specification definitely discloses where you can have a motion sensor that can have a single accelerometer. That's not my question. Okay, I'm sorry. So to put it maybe in the most challenging form. If each of the embodiments that is talked about throughout the spec happens to have, within any given sensor, a bunch of stuff in it, then it's not surprising that in describing what is in those embodiments, the patent talks about accelerometer being in the sensor, not being the sensor. But if there are no embodiments being described in which the sensor is nothing but an accelerometer, and if that's the case, then it feels to me like I want to discount as ultimately not significant for changing what I think is the plain language of the claim on its own to exclude as you want to exclude what the board said, which is an accelerometer can be a sensor. And if you have a plurality of accelerometers, then you have a plurality. If you have three accelerometers, then you have, in fact, met this plain language. A plurality of sensors with a plurality includes singular S, right, after includes. The sensors include the three accelerometers. There's a couple problems with that, Your Honor, in that view, and we briefed this. One is, under that view, if you agree, if this court, I should say, if this court agrees with the board that those limitations are not separate or not separate and distinct, that they're the same, that they equate, then their mappings to Kroll and Damon, of course, you know, flip it loose, but that's not our position. We think this is wrong, and here's why. When you look at that term, plurality of sensors, there's no dispute that plurality can mean two or more. I don't think anyone's going to quibble with that. But when you equate that term at least three accelerometers like the board has done, now you've changed the language of the claim to not require two or more or encompass two or more. Now it has to have at least three or more, and that's not the language of the claim, and that's not consistent with what the specification describes. Dependent claims do that all the time. So is it your view that because this is an independent claim, there might be a dependent claim. In patent claiming, there might be a situation where you have an independent claim, you recite an element, and then get a dependent claim, you further recite something like where main sensors include at least three accelerometers, right? I mean, that does happen. So is your argument really that you're relying on the specification, of course, but also this argument you're making now seems to require that we really think that there's got to be some different way of looking at this when it's in the same claim, an independent claim. Well, not necessarily. I think even if you had the dependent claim, we could make the same argument to Your Honor. In other words, when it says plurality of sensors, keep in mind we're saying in the context of what the patent has, these are, let me quote from their expert, Phillips' expert, if you have a, if the motion sensor contains accelerometers inside the motion sensor, then that is a sensor that is claimed in the 377. That's Appendix 2898. That was Phillips' expert. That's Fitbit's position. So we could make that same argument with respect to a dependent claim. Are you relying on the expert testimony, Phillips' expert testimony to support your claim construction? That is extrinsic evidence that helps support the claim construction. It's not intrinsic evidence. Obviously, you don't have to rely on it, but it's definitely something that could be considered as extrinsic evidence. But I want to get to your dependent claim question, Your Honor. When you, dependent claims three and five give a good example too. Those claims indicate that the plurality of sensors can include different types of sensors, altitude sensors, physiological sensors, motion sensors, and that's all consistent with the specification. By following what the board, this is part two, you have three or two, but if you follow what the board has done, now you're equating an accelerometer to a physiological sensor, which there's no support in the specification or in the intrinsic record that that's the case, or an altitude sensor becomes an accelerometer. So to your point, Your Honor, when you were asking if accelerometers. You're well over your opening time and your rebuttal time, so I'm going to call this to an end. You've got to finish your answer to Judge Stoll's question, but that's as far as you're going to go at this point. Yeah, I appreciate that, Your Honor. I think I answered your question, Your Honor, but if you have something else. Thank you. I'll do it on, if I get it wrong. Anyway, I appreciate it. You'll have it. Thank you. Good morning. May it please the Court. Despite not offering claim constructions below, Fitbit on appeal now attempts to imply constructions using arguments that are internally inconsistent and contradict both the intrinsic record and the weight of the evidence. In particular, with respect to Fitbit's arguments that the claimed plurality of sensors cannot be three accelerometers. To obtain allowance of the patent during prosecution, the applicant incorporated a dependent claim that literally said the plurality of sensors are three accelerometers. Further, it should not be forgotten that Fitbit's requested relief here. I don't remember this exactly. I thought that incorporate covers a little bit too much territory. There was actually some change in the language. There was some change in the language, Your Honor, but the prosecution history said the independent claims were rejected. Claim eight, the dependent claim, was indicated as being allowable. To obtain allowance, the argument that was made by the prosecution attorneys were incorporating the allowable subject matter from claim eight. Claim eight stated that. Can you address this specification? It seems to me that that is, to my mind at least, a one and only argument that the other side has to make, that everywhere that you look in this specification, there's a distinction made between sensor and accelerometer. Certainly, Your Honor. With respect to that, what Fitbit points to is that figure. It allows figures 3A and 3B. But if you look at the actual writing of the specification, you'll see that the specification states, and I'm at the appendix 112, column 6, starting at line 42, and I'm going to quote here, a motion sensor generates data which is representative of motion of the user. That's what a motion sensor is. So all the board needs to determine is, does an accelerometer generate data that is indicative of motion? There doesn't seem to be any dispute that that is, in fact, true. And if that's the case, that's the definition offered by the specification. And it's not the only time the specification states that. The specification also states... But does the spec ever equate, even sometimes, an accelerometer with a sensor? Well, I would say the original specification is filed, which had the dependent claim made that said the plurality of sensors are three accelerometers certainly did. But not in the surviving written description. No, I think the issue here is, Your Honor, that figure 3B was sort of a draftsperson's sort of drawing of a sensor 12, and it could be any one of more of these things. So the specification certainly indicates that at column 3, line 6 through 8, exemplary motion sensors, which include, for example, one or more accelerometers. The argument, and I think to give context here, the argument is essentially because of the box drawing in figure 3B, where there's a sensor, big box, and then other things that can be in it. Well, according to Fitbit, and you'll notice throughout the briefing below and the briefing here, Fitbit often says that an accelerometer is not necessarily a sensor. It sometimes can be, and sometimes it's not, which is not really a good, plain and ordinary meaning of the term sensor. What seems to be going on is Fitbit wants to maintain what it asserts in litigations. And with respect to litigations, it asserts these claims against individual triaxial accelerometers and says that's what is infringing this claim. And I direct the panel to the appendix at 1558, where there's a claim chart that does exactly that. There's a triaxial accelerometer, therefore it meets the term claims. The argument seems to be sometimes an accelerometer or multiple accelerometers is counted as being in the box called sensor, and sometimes it's not. But apparently Fitbit gets to tell us when it does fall within one box and when it does not fall within the outside box. And sort of complicating this is there was no claim construction on this below. The only thing offered below is the plain and ordinary meaning. And I'll note that Fitbit brought up Phillip's expert's statement, so I'll note Fitbit's expert's statement. In the appendix at 1646 and 1647, Fitbit's expert, when asked about the plain and ordinary meaning, says, a sensor is a device that senses. That's its plain and ordinary meaning. The only real issue here is, is an accelerometer a thing that senses? And in this case, senses motion. If the answer is yes, then a single accelerometer falls within the plain and ordinary meaning of a sensor. Looking at the prosecution history, that is supported. Looking at the definition in the 377, that it's anything that generates data representative of motion supports that. All that Fitbit relies upon is this idea of, well, if you look at Figure 3B, there could be a big box and a little box. And sometimes things are in the same box and sometimes they're not. And we'll tell you later without a claim of construction whether it's multiple boxes or a single box, which is not really a discussion in the specification. That's kind of an avoidance of what's actually written. And I'll note one other place in the specification where this is addressed, and that's appendix 113, column 7, starting at line 52. All types of sensors and sensing techniques, whether now known or later developed, that generate data which is representative of motion of the user are intended to fall within the scope of the present invention. And the question is, how can an accelerometer not meet that? And how can it not meet it when Claim 8 originally said that the plurality of sensors are? The reason for the structure of this claim where it says a plurality of sensors, wherein the plurality of sensors include, is only because that that latter part was in a dependent claim and got brought over. Yes, some of the language was changed, but the intent was clear from the prosecution history. And for that reason, the plain and ordinary meaning is that it would fall within the scope of the claims. I know we did not hear about this this morning because we took all of the time on this first point, but there's a separate issue, is there not, about the meeting of the activity limitation and duration and intensity of work? Correct, Your Honor, and I'm happy to address that. How do you get the intensity out of, I guess, null? Curl. Curl, sorry. Well, let's start with the fact that there was a construction presented below in the petition. That construction stated that, broadly speaking, activity points are, I'm going to quote here, measures of energy expenditure such as the number of calories burned. That construction that was presented in the petition was actually a quote of Fitbit's own statement in its ITC litigation, which can be found in the appendix at 1334. And that construction applied to all of the claims, claims 1, 10, and 25. And I direct the panel's attention to the appendix at 1558 and 1560, where calories are counted, according to Fitbit, as falling within the scope of activity points even for claim 25. And the difference is for claim 1 it says activity points that correlate to only amount, and for claim 25 it's amount or intensity. So we start from the premise here that the construction proposed below, which was a quote of Fitbit's own position, was that calories fall within the scope of the meaning of activity points. Fitbit's own expert adopted that construction in the appendix at 2427 paragraph 20. And as the board noted below, Fitbit did not provide an alternative construction or point to any error. So we're starting here with a construction of activity points can include calories. Crowe discloses- I guess just to try to get to what is in my mind, and it may have a simple answer because all this that you're describing sounds like- It's a buildup. Right. Calories can mean amount of calories and how many calories are burned in a particular time period, which would be an intensity concept. Somehow the intensity concept got into this, and I want to understand- Sure. Did the board rely on intensity concept? And if so, where does Crowe show the intensity? Certainly. So the idea- I know that your expert has, I think, more or less a single sentence in, I don't know, paragraph 119 or something of his declaration, which the board cited- am I getting the cases right? Maybe I'm confusing cases- that makes the assertion, but I don't see a citation to Crowe. Certainly. So Crowe describes, and the other reference Damon describes as well, the idea that what is being measured here and displayed on these displays is the total calorie expenditure for a day. And it's basically tracking that. So you have a display that will say, so far today you've burned 200 calories. Later in the day it might say you've burned 500. And that can be found in Crowe, for instance, paragraphs 41, 81, and 89. And there doesn't seem to be any dispute that both Crowe and Damon disclose total calorie expenditure over the course of the day. That is not a rate, as Fitbit seems to argue. That is, what did you do today? You burned 500 calories. That is a total calorie expenditure. Then comes the second question, what's that made up of? And if you look at, for instance, Crowe's figure 14 is a good way to look at this. And that's the output from one of the accelerometers, specifically along the Z axis. When we're talking about calories and we're talking about total calorie expenditure, we're talking about total amounts and total intensity. The calorie expenditure will vary based on the number of steps you took in a day. But it will also vary based on the intensity of those steps. For instance, where you're running versus where you're walking. And if you look at figure 14, you see over the course of some period of time, whether it's an hour or whether it's a day, the total calorie expenditure in Crowe is basically what it calls or calculated from composite acceleration. That is everything from the outputs of all three accelerometers added together. So as you can see from figure 14, you can sort of see the frequency of the steps, which would indicate speed. You can see the amplitude of steps, which would be how hard are you hitting the ground. And how many steps did you do over the course of that period of time. So amount might be time. It might be number of steps. Intensity would be impact of the step or speed. What Crowe does, as explained in paragraphs 89 and 91, is it takes the outputs of all the accelerometers, adds them together, and then it converts that to calories. Therefore, calories and composite acceleration correlate to both the amount of exercise, how many steps did you do, and the intensity of the exercise, where you're running versus walking. Okay, that's enough for me. Yeah. And for that reason, that is why what is taught in the Crowe specification, as well as in Damon, which is also, just to be clear, Damon calls it total PAI, because it says it doesn't like calories as much, because it has to deal with the weight of the person and the age of the person, and therefore its total energy expenditure is a different unit of measurement, but it's still the total energy expenditure of the day. So in both cases, what was relied upon is the total energy expenditure as being activity points. And even the 377 patent indicates that those things vary with respect to intensity. In that regard, I would direct the panel's attention to, in the 377 patent, for instance, at column 12, starting at line 7, it talks about calculating calorie consumption, burn, and or expenditure using data which is representative of intensity. Calories are based on intensity. And it goes on in other places, including column 8, line 62, and column 10, line 36, to talk about the fact that your calorie expenditure changes based on the speed of your activity. Are you running or are you walking? There's no real dispute here that overall calorie expenditure varies on both intensity and amount, and that is all that is needed to meet the requirements of these claims. The spec itself says that activity points can be measured in calories, and that's what was relied upon for Kroll. And it's that simple. I have time remaining, but I won't take the panel's time if there are no further questions. Thank you. Thank you. Mr. Pallas, restore the rebuttal time. Thank you, Erler. I'll try to be brief. So I want to touch on sensor and then activity point real quick. In terms of the sensor limitation, I think I'd like to direct the court to Appendix 454, which is our SIR reply. There's a figure there that hopefully will frame the issue, and then I'll move on. I'll give you a second to get there. But in that, on Appendix 454, you'll see this image that Fitbit presented in supporting its arguments. And on the left, you see what we have in the patent. The red box is the motion sensor or a sensor. Now, keep in mind the claims don't require the – Claim 1 doesn't require it to be a motion sensor. It can be any type of sensor. But anyway, the blue box is an accelerometer. Yes, in a 377 patent, you can have multiple accelerometers inside that red box. You can have one, to your honor's one question, or you can have three or more, or you can have different things. On the right-hand side is effectively what Phillips was arguing and what the board – the result of the board's interpretation. It flips it on its head that by calling an accelerometer a sensor and then uses point to a single triaxial accelerometer, they're calling that accelerometer the sensor. But the claim requires that the sensor include the accelerometer. So it actually turns it on its head, and I think this graphically shows what our position is. In terms of activity point, I'll just touch on a couple points. The discussion in Figure 14 that we heard today is what Phillips relied on to support his position that composite acceleration correlates to both intensity and amount. But I want to make sure that the court understands this. In Claim 10, it requires both. That's not disputed. So composite acceleration was one of the things that the board pointed to for the calculate limitation. To get there, Phillips relied on their expert's opinion, which we believe is unsupported, that the notion that you can take outputs from the triaxial accelerometer, the XYZ axis, and use that to calculate step count was not supported by the specification, and thus here we are without support from substantial evidence to support the board's following of that. If you read Paragraph 95 in the discussions of Figure 11, Figure 12, and Figure 13, it doesn't do what we heard counsel said today, respectfully. Composite acceleration is not used to calculate the calorie count. The Figure 14 discussion shows amplitudes, spikes, and even their expert agreed that that's a landing force. That's intensity. This is what Fitbit was arguing. Our position is composite acceleration only correlates to intensity. It doesn't correlate to amount, and therefore doesn't meet Claim 10, for example, and 25. Figure 14 shows the Z axis, and so what happens as described in Paragraph 95 of Crowell is, actually, Figure 12 is a good example of that. There's steps S14, 15, through 16. It shows you calculate the resultant vector. That's the composite acceleration, same word. It's just a vector, and how that's calculated is it takes the outputs from the accelerometers and squares them and comes up with a value. The next step is now you have to determine if a step was declared, and that's what you see in Figure 14 about the spikes. If something's over a certain threshold, it doesn't tell you the number of steps. It only tells you if a step has been declared. That's intensity because of the landing force. The next step in Figure 12 goes to summing those values to get the count, but also summing the vector. That's the composite acceleration. There's your distinction between using composite acceleration as a vector to do some analysis as opposed to using it to calculate a step count, keyword count here. It identifies a count, but not step counts. Step count is correlated to an amount. It's not correlated to an intensity. Just because I know I want 100 steps does not tell me how hard I was working out when I did that. That just tells me I want 100 steps. That's an amount. So unless the court has any other questions, I'll pass it on. Thank you. Thanks to both counsel. Case is submitted.